STATE OF MINNESOTA

IN SUPREME COURT

A13-1596

Court of Appeals                                                           Page, J.
                                                        Dissenting, Stras, J.

Cody Devereaux Sleiter, et al.,

                    Appellants,

vs.                                                        Filed:  August 5, 2015
                                                  Office of Appellate Courts

American Family Mutual Insurance Company,

                    Respondent.

_____

James S. Ballentine, Richard L. Tousignant, Schwebel, Goetz & Sieben, P.A., Minneapolis, Minnesota, for appellants.

Lynn B. Noland, American Family Insurance, Eden Prairie, Minnesota; and

Louise A. Behrendt, Stich, Angell, Kreidler, Dodge & Unke P.A., Minneapolis, Minnesota, for respondent.

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, Minnesota, for amicus curiae Minnesota Association for Justice.

_____

S Y L L A B U S

1.      The phrase "coverage available," as used in Minn. Stat. § 65B.49, subd. 3a(5) (2014), in reference to the "excess insurance protection" for an injured insured, is susceptible to more than one reasonable interpretation, and therefore is ambiguous.

1

2. The phrase "coverage available," as used in Minn. Stat. § 65B.49, subd. 3a(5), in reference to the "excess insurance protection" for an injured insured, refers to the benefits paid to the insured under the coverage provided by the occupied vehicle's policy.

Reversed.

O P I N I O N

PAGE, Justice.

Appellant Cody Sleiter seeks excess underinsured motorist (UIM) coverage benefits from his family's automobile policy with respondent American Family Mutual Insurance Company (American Family) because his damages exceeded the recovery available to him under the coverage of the vehicle in which he was a passenger. Sleiter argues that the district court and court of appeals erred in concluding that he cannot recover UIM benefits from his policy because his $100,000 UIM limit is not greater than the UIM "coverage available" to him from the occupied vehicle. For the following reasons, we reverse.

The facts of this case are undisputed. Sleiter was one of 19 individuals injured when a school bus was struck by an at-fault vehicle on February 19, 2008, in Cottonwood. Sleiter suffered extensive damage to his right leg, hip, and lower back. The at-fault vehicle had a liability limit of $60,000 per accident; the school bus had $1,000,000 in UIM coverage. Following the accident, the carriers for the at-fault vehicle and the school bus tendered their respective policy limits to the district court. Then, the district court appointed a Special Master to assess the victims' damages and determine

2

the value of each claim. The Special Master found that the damages for the 19 victims totaled $5,302,800. With respect to Sleiter, the Special Master found that his damages totaled $140,000. Due to the substantial gap between the total damages and the tendered insurance limits, the Special Master concluded that the 19 victims would share on a percentage basis in the insurance proceeds. After calculating the percentage basis for each claimant, the Special Master found that Sleiter's pro rata share was $1,600.33 from the at-fault vehicle's policy, and $34,543.70 from the school bus's policy. The district court approved the Special Master's findings and Sleiter received his respective share of the proceeds, which totaled $36,144.03.

Because Sleiter's damages exceeded the insurance coverage available to him under the pro-rata distribution, Sleiter sought $65,456 in excess UIM benefits from American Family, which insured the Sleiter family vehicle for up to $100,000 in UIM coverage. American Family denied coverage, claiming that, pursuant to Minn. Stat. § 65B.49, subd. 3a(5) (2014), of the Minnesota No-Fault Automobile Insurance Act (No-Fault Act), Sleiter's excess UIM coverage ($100,000) did not "exceed" the UIM coverage provided by the school bus's insurance ($1,000,000). American Family, therefore, denied Sleiter's claim for excess UIM benefits.

After American Family denied Sleiter's claim, Sleiter brought this action, seeking the difference between the recovery he received and his UIM policy limits, or $65,456, from American Family. The parties brought cross-motions for summary judgment. The district court agreed with American Family's reasoning, granted its summary judgment motion, and denied Sleiter's motion. The court of appeals affirmed. *See Sleiter v. Am.*

3

*Family Mut. Ins. Co.*, No. A13-1596, 2014 WL 1272402, at *3 (Minn. App. Mar. 31, 2014). We granted Sleiter's petition for review.

I.

It is undisputed that Sleiter has recovered less than his total damages from the at-fault vehicle and the school bus. The question is whether he is entitled to recover excess UIM benefits from his family's policy to compensate for that under-recovery.

On appeal from a grant of summary judgment, we determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law, *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013), construing the facts in the light most favorable to the party against whom summary judgment was granted, *J.E.B. v. Danks*, 785 N.W.2d 741, 746 (Minn. 2010). Here, the facts are undisputed and the only question before us concerns the correct application of the No-Fault Act. Statutory interpretation is a question of law that we review de novo. *Emerson v. Sch. Bd. of Indep. Sch. Dist. 199*, 809 N.W.2d 679, 682 (Minn. 2012).

"The No-Fault Act requires all motor vehicle insurance policies issued in Minnesota to provide certain minimum limits of uninsured (UM) and UIM coverage."[1] *West Bend Mut. Ins. Co. v. Allstate Ins. Co.*, 776 N.W.2d 693, 697 (Minn. 2009); *see also* Minn. Stat. § 65B.49, subd. 3a(1) (2014). Minnesota Statutes § 65B.49, subd. 3a(5),

---

[1] A motor vehicle is "underinsured" if the "bodily injury liability policy applies at the time of the accident but its limit for bodily injury liability is less than the amount needed to compensate the insured for actual damages." Minn. Stat. § 65B.43, subd. 17 (2014).

4

establishes the framework for determining the sources of coverage for UIM claims, *West Bend*, 776 N.W.2d at 697, and provides:

> If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle. However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured. The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the *coverage available* to the injured person from the occupied motor vehicle.

Minn. Stat. § 65B.49, subd. 3a(5) (emphasis added).

The three sentences in this provision explain the source of primary UM and UIM coverage (the "occup[ied]" vehicle), the source of excess UM and UIM coverage (a vehicle covered by a "policy in which the injured party is otherwise insured"), and the availability of excess coverage. *West Bend*, 776 N.W.2d at 698, 702; *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 46 (Minn. 2008) ("[T]he statute is intended as a list of priorities. . . ."). The final sentence in Minn. Stat. § 65B.49, subd. 3a(5), which explains limits on excess-insurance protection, is the focus of this appeal. Specifically, the parties' dispute requires that we consider the proper interpretation of the phrase "coverage available" in the final sentence.

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). To interpret a statute, we first assesses "whether the statute's language, on its face, is clear or

5

ambiguous." *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 434 (Minn. 2009) (citation omitted) (internal quotation marks omitted). When the words of a law are "clear and free from all ambiguity," the plain meaning controls and will not be "disregarded under the pretext of pursuing the spirit" of the law. Minn. Stat. § 645.16; *Laase*, 776 N.W.2d at 434. When the words of a law are susceptible to more than one reasonable interpretation, the statute is ambiguous. *Emerson*, 809 N.W.2d at 682. "When the language of a statute is unclear or ambiguous, we will go beyond the specific language of the statute to determine the intent of the legislature." *Id.* at 684. With these principles in mind, we turn to interpreting the phrase "coverage available."

We have previously considered the application of subdivision 3a(5) in the context of a multi-vehicle, single-injured plaintiff accident. In *Schons v. State Farm Mut. Auto. Ins. Co.*, the injured plaintiff (Schons) was a passenger in V.G.'s automobile when an accident occurred with B.K.'s automobile. 621 N.W.2d 743, 744 (Minn. 2001). Schons sustained extensive injuries and damages. *Id.* Both drivers were negligent and underinsured. *Id.* V.G. carried insurance of $50,000 each in liability and UIM coverage, while B.K. carried insurance of $50,000 in liability coverage. *Id.* Schons received $50,000 in liability benefits from V.G., and $48,000 in liability benefits from B.K. *Id.* at 744-45. After this recovery, Schons' damages exceeded the benefits she received. *Id.* at 745. Accordingly, Schons sought additional benefits from V.G.'s UIM coverage for both drivers' underinsured negligence. *Id.* V.G.'s insurer paid Schons $50,000 for B.K.'s underinsured negligence, but denied Schons' claim for additional benefits for V.G.'s underinsured negligence because Schons had already received $50,000 in liability

6

benefits under V.G.'s policy. *Id.* Consequently, Schons sought $50,000 in UIM benefits from her own insurance provider—which had insured Schons up to a $50,000 UIM limit—for V.G.'s underinsured negligence. *Id.* Schons' insurance company denied the claim, asserting that Minn. Stat. § 65B.49, subd. 3a(5), precluded Schons from recovering additional UIM benefits because the $50,000 UIM limit on her policy did not exceed the host vehicle's policy limit, which was also $50,000. *Id.*

We recognized that Schons' claim "center[ed] on the third sentence of subdivision 3a(5)," and that the function of this subdivision "is to connect an injured passenger's total UIM benefit recovery to the limit specified for the motor vehicle the passenger occupied" unless "the passenger's preselected level of UIM coverage exceeds the host vehicle's UIM limits." *Id.* at 747-48. We held that, because the $50,000 of UIM benefits available to and recovered by Schons through V.G.'s policy was the same as the $50,000 in UIM coverage through her policy, "Schons [was] not entitled to recover additional UIM benefits from her own insurer" because "she could not reasonably expect to recover more than the $50,000 of UIM coverage for which she paid premiums." *Id.* at 747. We did not consider, however, what "coverage available" means outside the context of the facts before us in that case, such as when an injured insured is incapable of recovering the occupied vehicle's policy limit, which is the case here.[2] We, therefore, return to the language of the statute.

---

[2] American Family concedes that "[t]his Court in *Schons* therefore did not address a factual situation where multiple injured parties claimed access to the UIM limits of the host policy. . . ."

The term "coverage available," while undefined in the statute, appears twice in Minn. Stat. § 65B.49, subd. 3a(5), once in the first sentence and once in the third sentence. American Family urges us to conclude that "coverage available" is the same as the policy limit of the host vehicle's UIM coverage; in this case, the school bus's $1,000,000 UIM policy limit. Under this interpretation, Sleiter would be unable to recover UIM benefits from American Family because the "limit of liability for [Sleiter's] like coverage" ($100,000) would not exceed the "coverage available" to Sleiter from the school bus's policy ($1,000,000). This is a reasonable interpretation of "coverage available" and is one that could have been applied in the context of a single-injured insured accident. *See Schons*, 621 N.W.2d at 747. American Family's interpretation is consistent, for example, with "the goal of connecting a passenger's recoverable UIM benefits to the host vehicle's policy." *Id*. at 748.

Sleiter argues that "coverage available" means the amount recovered by the insured person from the host vehicle's UIM policy. Here, once the Special Master calculated all of the claims for purposes of determining the distribution of the vehicles' UIM policy limits, the "coverage available" to him, Sleiter argues, was $34,543.70, his pro rata share. Then, Sleiter concludes, he is entitled to recover excess UIM benefits from American Family because the "limit of liability for like coverage" ($100,000) exceeds the "coverage available to" him ($34,543.70).

Sleiter's interpretation is also reasonable. First, it preserves a distinction between two different phrases in the third sentence, "limit of liability" and "coverage available." *State v. Nelson*, 842 N.W.2d 433, 439 (Minn. 2014) ("Generally, when different words

8

are used in the same context, we assume that the words have different meanings." (citation omitted) (internal quotation marks omitted)). Second, Sleiter's interpretation is consistent with the legislative purpose of UIM coverage, which is to "relieve the severe economic distress of uncompensated victims of automobile accidents." Minn. Stat. § 65B.42(1) (2014). This is most apparent in the context of accidents involving multiple injured passengers. The "coverage available" to a single victim is obvious: the policy limits. In contrast, the "coverage available" in accidents involving a large number of injured passengers is unknown until the claims are made against the policy.

Perhaps the best example of the inability to identify the "coverage available" in a multi-victim accident is Sleiter's situation in this case. Here, Sleiter was one of 19 individuals injured when a school bus was struck by an at-fault vehicle. The "limit[s] of [UIM] liability" were established before the accident occurred: $1,000,000 for the school bus, and $60,000 for the at-fault car. The "coverage available" from those liability limits, however, depended on factors unknown until after the coverage-triggering event: the number of injured persons, the extent of the injuries, and the claims made. The coverage available from the UIM proceeds was inadequate to fully compensate all of the injured passengers. Thus, in accidents involving a large number of injured passengers, Sleiter's reading of "coverage available" is the more natural reading because it is more consistent with the legislative purpose of preventing injured passengers from being undercompensated. *See* Michael K. Steenson, *Minnesota No-Fault Automobile Insurance* § 15.07[2][e] (3d ed. 2007) (explaining that it is reasonable to allow an excess insurance

claim for the coverage that was "in fact available" to the injured party).[3]  It also prevents

overcompensation by limiting claims to the amount of coverage selected by the insured.

*See id*.

American Family argues, in essence, that Sleiter's interpretation is flawed because

the Legislature did not intend for the phrase "coverage available" in the first sentence to

be divorced from or given a separate meaning from the same phrase in the third sentence.

We disagree.  As previously noted, the first and third sentence read respectively:

> If at the time of the accident the injured person is occupying a motor
> vehicle, the limit of liability for uninsured and underinsured motorist
> *coverages available* to the injured person is the limit specified for that
> motor vehicle.

> [E]xcess insurance protection is . . . available only to the extent by which
> the limit of liability for like coverage applicable to any one motor vehicle
> . . . exceeds the limit of liability of the *coverage available* to the injured
> person from the occupied motor vehicle.

Minn. Stat. § 65B.49, subd. 3a(5) (emphasis added).  While the first and third sentences

use many of the same words and phrases, the two sentences do not use those words and

phrases in the same context.  More importantly, the two sentences serve different

purposes.  The first sentence simply defines one source for UIM benefits:  the occupied

---

[3]     *See also* Theodore J. Smetak, *Underinsured Motorist Coverage in Minnesota: Old Precedents in a New Era*, 24 Wm. Mitchell L. Rev. 857, 939 (1998) ("It would seem that the Minnesota UM/UIM system is preserved if the surplus UM/UIM carrier is given credit for the amount of the host/primary UM/UIM which was legitimately 'available' to the insured.  In other words, if the insured was one of several injured in a vehicle, and if the host vehicle's UM limits were fairly divided, then the surplus UM/UIM insurer is responsible for a maximum of its limit less the amount that was 'available' to the insured from the host vehicle.  It is unfair to the insured who selected and paid for a policy limit to eliminate that coverage.").

vehicle's UIM coverage up to the limit of liability. In contrast, the third sentence distinguishes between the "limit of liability for like coverage" on the insured's vehicle from the "coverage available" to the injured person from the policy limit for the occupied vehicle. If the Legislature had intended the comparison to be only between two policy limits, it could easily have ended the third sentence with "exceeds the limit of liability specified for the occupied motor vehicle." The Legislature did not do so. *See Frederick Farms, Inc. v. Cty. of Olmsted*, 801 N.W.2d 167, 172 (Minn. 2011). Instead, the Legislature used a different comparison, looking to the "coverage available to the injured person" from the UIM policy on the occupied vehicle. Therefore, it is not unreasonable for the phrase "coverage available" in the first sentence to have a separate meaning from the same phrase in the third sentence.

## II.

Because there are two reasonable interpretations of the term "coverage available" in Minn. Stat. § 65B.49, subd. 3a(5), we conclude that the phrase, and therefore the statute, is ambiguous. When a statute is ambiguous, "we will go beyond the specific language of the statute to determine the intent of the legislature." *Emerson v. Sch. Bd. of Indep. Sch. Dist. 199*, 809 N.W.2d 679, 684 (Minn. 2012). Additionally, the Legislature has set forth a nonexclusive list of factors that we are to consider to determine legislative intent. *See* Minn. Stat. § 645.16. This list includes:

> (1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the

11

contemporaneous legislative history; and (8) legislative and administrative interpretations of the statute.

*Id.* The most relevant factors here are the purpose of the legislation and the consequences of the interpretations proposed by the parties.

The No-Fault Act's relevant purposes are "to (1) relieve uncompensated victims from the economic stress caused by automobile accidents, (2) prevent overcompensation of automobile accident victims, . . . and (5) prevent automobile accident victims from receiving duplicate recovery." *Scheibel v. Ill. Farmers Ins. Co.,* 615 N.W.2d 34, 37 (Minn. 2000). As noted above, Sleiter's proposed interpretation furthers the legislative purposes by compensating accident victims while also limiting their claims to the amounts of coverage selected by the insured. *See* Michael K. Steenson, *Minnesota No-Fault Automobile Insurance* § 15.07[2][e] (3d ed. 2007). American Family's interpretation, while reasonable in the context of a single-victim accident as in *Schons*, is unreasonable in the context of accidents involving multiple injured passengers. American Family's interpretation leaves victims insufficiently compensated for their injuries and unable to access the coverage limits they purchased.[4]

Our interpretation is not inconsistent with our decision in *Schons*. There, it was undisputed that the limit of the occupied vehicle's UIM coverage, $50,000, was "available" and paid to Schons. 621 N.W.2d at 747. We therefore concluded that Schons

---

[4]     American Family concedes that Sleiter "did not 'get what he paid for,' because his own UIM limits with American Family ($100,000) are less than the approximately $34,000 he actually received out of the available limits of $1 million under the school bus's policy."

12

recovered what she could reasonably have expected to recover: "$50,000 of UIM coverage for which she paid premiums." *Id*. Here, in contrast, Sleiter paid premiums for UIM coverage that he reasonably expected would be available to him, up to $100,000, if the UIM "coverage available" to him from an occupied vehicle's UIM policy was less than that amount.

Accordingly, Sleiter's interpretation is the better interpretation because it allows individuals such as Sleiter to access their personal insurance coverage giving them nothing more than access to the coverage that they have selected and purchased. *See id; Hayes*, 826 N.W.2d 799, 804 (Minn. 2013) (embracing the more reasonable of the two interpretations of a statute); *In re Estate of Butler*, 803 N.W.2d 393, 397 (Minn. 2011) (adopting the "better interpretation" of a statute). Because Sleiter's interpretation of "coverage available" more fully advances the legislative purposes of Minn. Stat. § 65B.49, subd. 3a(5), we conclude that "coverage available" means the benefits actually paid to the insured under the coverage provided by the occupied vehicle's policy.

Reversed.

STRAS, Justice (dissenting).

The court exalts policy over text when it concludes, contrary to the plain language of Minn. Stat. § 65B.49, subd. 3a(5) (2014), that Cody Sleiter was entitled to recover excess underinsured motorist ("UIM") benefits from his family's automobile insurer, American Family Mutual Insurance Company ("American Family"). The facts of this case are tragic, and there is no question, as the court observes, that Sleiter and his family did not receive the amount of excess UIM benefits that they expected from their own insurance policy.

Nevertheless, as the first sentence of Minn. Stat. § 65B.49, subd. 3a(5), makes clear, the disputed statutory phrase, "limit of liability of the coverage available," refers to the UIM-coverage limit "specified for [the occupied vehicle]," which in this case was the $1,000,000 limit of the school bus in which Sleiter was a passenger. Because the Sleiter family's UIM-coverage limit of $100,000 did not "exceed[] the *limit* of liability of the coverage available" from the school bus's policy, Sleiter was not entitled to recover excess UIM benefits from American Family. Minn. Stat. § 65B.49, subd. 3a(5) (emphasis added). Based on the plain and unambiguous language of Minn. Stat. § 65B.49, subd. 3a(5), I respectfully dissent.

I.

"As a general matter, UIM coverage is triggered when a tortfeasor's liability coverage is insufficient to fully compensate the injured person for the actual damages sustained in an accident." *Latterell v. Progressive N. Ins. Co.*, 801 N.W.2d 917, 922

(Minn. 2011).  In this case, Sleiter received $1,600.33 from the at-fault vehicle's policy and $34,543.70 in UIM benefits from the school bus's policy, which together did not fully compensate him for the actual damages he suffered in the accident.  He then turned to his family's policy with American Family to recover a portion of the uncompensated damages.  Under Sleiter's theory, he was entitled to recover $65,456.30 in excess UIM benefits from American Family, which was the difference between the UIM-coverage limit of $100,000 on his family's policy and the amount of UIM benefits he actually recovered under the school bus's policy.

Sleiter's theory presents a question of priority and allocation of damages among UIM insurers.  As the court observes, the legal question presented turns on Minn. Stat. § 65B.49, subd. 3a(5), which states as follows:

> If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle.

> However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured.

> The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.

The first sentence of the statute accomplishes two things.  First, it "operates 'to require the injured occupant to look first and exclusively to the policy limits on the

occupied vehicle' for UM or UIM benefits." *West Bend Mut. Ins. Co. v. Allstate Ins. Co.*, 776 N.W.2d 693, 699 (Minn. 2009) (quoting *Vue v. State Farm Ins. Cos.*, 582 N.W.2d 264, 267 (Minn. 1998)). Second, it indicates that the key language in this case, the "limit of liability . . . [of] coverages available," refers to the "limit [of UIM coverage] specified" for the occupied vehicle, no matter how many people occupied that vehicle at the time of an accident. *See Schons v. State Farm Mut. Auto. Ins. Co.*, 621 N.W.2d 743, 747 & n.1 (Minn. 2001).

The second sentence of the statute creates a priority scheme among UIM insurers by establishing that the insurance policy for the occupied vehicle provides the primary coverage and that other policies "in which the injured party is otherwise insured" provide secondary coverage. Minn. Stat. § 65B.49, subd. 3a(5). The third sentence, which contains the disputed language in this case, explains how to calculate the "coverage available" under secondary policies. Repeating language from the first sentence, the third sentence states that secondary UIM coverage is available to an injured person "to the extent by which the *limit* of liability" of the secondary policy exceeds "the *limit* of liability of coverage available to the injured person from the occupied motor vehicle." Minn. Stat. § 65B.49, subd. 3a(5) (emphasis added). In other words, as we have concluded, the third sentence simply "*requires* a comparison between UIM coverage *limits* on the host driver's vehicle and UIM *limits* on the passenger's own vehicle," the former of which is determined by the first sentence of the statute. *Schons*, 621 N.W.2d at 747 n.1 (emphasis added).

In this case, the amount calculated under the first sentence, which required a determination of the occupied vehicle's "limit of liability for uninsured and underinsured motorist coverages available to the injured person," was the school bus's UIM policy limit of $1,000,000. Minn. Stat. § 65B.49, subd. 3a(5). According to the second sentence, Sleiter could then look to his family's insurance policy for "excess insurance protection" because he was not a named insured under the school bus's policy. *Id.*; *see also West Bend*, 776 N.W.2d at 703 (holding that the term "insured" in Minn. Stat. § 65B.49, subd. 3a(5) refers to the "named insured" on a policy). However, under the third sentence, the "extent by which" the secondary policy's UIM limits exceeded the "limit of liability of the coverage available to the injured person from the occupied motor vehicle" determined Sleiter's entitlement to "excess insurance protection." Here, because the $100,000 limit of coverage available in the secondary insurance policy did not exceed the $1,000,000 limit of coverage available in the primary insurance policy, Sleiter was not entitled to "excess insurance protection." Minn. Stat. § 65B.49, subd. 3a(5).

## II.

In concluding otherwise, the court fails to interpret Minn. Stat. § 65B.49, subd. 3a(5), as a unified whole, gives no meaning to the repeated use of the word "limit" in the statute, defines materially identical phrases in the first and third sentences of the statute differently, and effectively overrules our definitive interpretation of the statute from *Schons*. The court also fashions an ambiguity based on its unsupported hypothesis that the Legislature simply failed to consider how the statute would operate in accidents involving multiple injured parties.

Rather than read the statute as a whole, as our case law instructs us to do, the court chops the statute into three independent parts. *See Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (instructing courts to read and interpret statutes as a whole in order to avoid conflicting interpretations). The court's artificial dissection of the statute leads it to conclude that it is unable "to identify the 'coverage available' in a multi-victim accident." Inexplicably, however, the court simply refuses to look to the statute's first sentence, which answers the *precise* question posed by the court of how to identify the limit of the coverage available from the occupied vehicle in an accident involving multiple victims.

The court then constructs an ambiguity by criticizing the Legislature for failing to "end[] the third sentence" with the phrase "exceeds the limit of liability specified for the occupied motor vehicle." According to the court, the Legislature's failure to add the suggested language means that it must have failed to consider how the statute operates in accidents involving multiple victims. It is quite a logical leap to hypothesize, without any objective evidence, that the Legislature failed to consider the exceedingly common situation in which a car accident results in injuries to multiple people. But even if the court is correct that the Legislature did not fully consider the various permutations of the statute, including how it operates in accidents involving multiple victims and multiple insurers, the court fails to explain why the additional language was necessary. After all, the court's suggested language merely repeats the first sentence of the statute, which makes clear that, for the occupied vehicle, the "*coverage[] available* to the injured person

is the *limit specified* for that motor vehicle." Minn. Stat. § 65B.49, subd. 3a(5) (emphasis added).

The court's analysis is even more puzzling when it suggests—contrary to our canons of construction—that American Family's interpretation of the statute is reasonable in the context of a single-victim accident, but that it is untenable when applied to accidents involving multiple victims. The court seems to suggest that the disputed provision requires one interpretation in single-victim accidents, but an entirely different interpretation in multi-victim accidents. Yet in interpreting the same statute in a recent case, we held that "the meaning of 'insured' in subdivision 3a(5) does not change depending on the context." *West Bend*, 776 N.W.2d at 703; *see also Langston v. Wilson-McShane Corp.*, 776 N.W.2d 684, 690 (Minn. 2009) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)). Here, however, the court adopts a contrary view, concluding that the phrase " 'coverage available' in the first sentence [has] a separate meaning from the same phrase in the third sentence" because of the differing contexts of the two sentences. Nothing in the statute suggests that the meaning of the word "insured" is static, as we held in *West Bend*, but that the meaning of the accompanying phrase "coverage available" can change.

The foregoing observation leads to the final problem with the court's decision: it overrules, or at least seriously casts doubt on, our definitive interpretation of Minn. Stat. § 65B.49, subd. 3a(5), from *Schons v. State Farm Mut. Auto. Ins. Co.*, 621 N.W.2d 743, 747 & n.1 (Minn. 2001). The court is correct that *Schons* involved a single-victim car

accident. However, nowhere in *Schons* did we hint, much less say, that our interpretation of Minn. Stat. § 65B.49, subd. 3a(5), depended on the fact that the accident involved only a single victim. Instead, we stated, without qualification, that the function of the third sentence "is to connect an injured passenger's total UIM benefit recovery to *the limit specified* for the motor vehicle the passenger occupied." *Schons*, 621 N.W.2d at 747 (emphasis added). We further explained that the exception to "this general rule occurs where an injured passenger has preselected a greater level of UIM coverage than the amount covering the host vehicle." *Id.* We then removed all doubt regarding the operation of the statute when we declared, in an explanatory footnote, that "the statute *only* requires a comparison between UIM coverage limits on the host driver's vehicle and UIM limits on the passenger's own vehicle." *Id.* at 747 n.1 (emphasis added). The plain-language interpretation I would adopt today is not only consistent with *Schons*, it *is* the interpretation from *Schons*.

For its part, the court does not claim that its interpretation of Minn. Stat. § 65B.49, subd. 3a(5), is consistent with *Schons*. Instead, it suggests that we did not consider in *Schons* what "coverage available" means in a multi-victim accident, a suggestion that hardly seems reasonable in light of the categorical language we used in that case. Therefore, the only conclusion I can reach is that the court's interpretation in this case effectively overrules the definitive interpretation we adopted in *Schons*. As we have stated, "[t]he doctrine of stare decisis instructs us to adhere to our former decisions in order to promote the stability of the law and the integrity of the judicial process." *Walsh*

*v. U.S. Bank, N.A.*, 851 N.W.2d 598, 604 (Minn. 2014).  In my view, the court's decision today is an indefensible departure from the principle of stare decisis.

III.

For the foregoing reasons, I respectfully dissent.