*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1970**

David B. Markle, et al.,
Respondents,

vs.

Metro Metals Corporation,
Appellant.

**Filed August 29, 2016
Affirmed
Peterson, Judge**

Ramsey County District Court
File No. 62-CV-14-776

Michael T. Cain, Kennedy & Cain PLLC, Minneapolis, Minnesota (for respondents)

James T. Smith, Craig D. Greenberg, Huffman Usem Crawford & Greenberg, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Peterson, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from a judgment following a jury trial on respondents' claims for conversion and violations of Minn. Stat. § 609.53 (2014) (receiving stolen property), appellant argues that the district court erred by (1) allowing two respondents to recover under section 609.53 when appellant was not convicted of receiving stolen property;

(2) awarding the full amount of requested attorney fees to those two respondents; and (3) allowing the other five respondents to recover on conversion claims when their claims under section 609.53 failed. We affirm.

## FACTS

Respondents, six individuals and one corporation, initiated this lawsuit against appellant Metro Metals Corporation, a scrapyard, on theories of common law conversion and statutory liability under Minn. Stat. § 609.53, subd. 4, for receiving stolen property. Respondents alleged that appellant demolished eight stolen vehicles after purchasing the vehicles from thieves without requiring proof of title and without making an effort to verify the vehicles' owners or determine whether the vehicles had been reported stolen. Respondents asserted that appellant knew or had reason to know that the vehicles had been stolen. Appellant stipulated that respondents owned the vehicles, which had been stolen, and that appellant purchased the vehicles from parties other than the owners.

On the first day of trial, appellant moved to dismiss the cause of action brought under Minn. Stat. § 609.53, subd. 4. Appellant argued that a criminal conviction of receiving stolen property under Minn. Stat. § 609.53, subd. 1, is a prerequisite to liability under subdivision 4. The district court determined that the plain language of the statute does not condition liability on a conviction and, therefore, denied the motion.

The jury found that appellant had converted seven of the vehicles and awarded the owners actual damages.[1] The jury also found that appellant's conversion of three of the vehicles, owned by respondents More4aBuck, Inc. and Kathleen Raine, violated Minn. Stat. § 609.53, subd. 1.

Appellant moved for judgment as a matter of law on the receiving-stolen-property claims, again arguing that liability under Minn. Stat. § 609.53, subd. 4, requires a conviction of receiving stolen property. Appellant also moved for judgment as a matter of law or a new trial on the conversion claims, arguing that appellant could not be held liable for conversion given the evidence presented and the jury's findings that appellant did not violate Minn. Stat. § 609.53, subd. 1. The district court confirmed its previous ruling that liability under Minn. Stat. § 609.53, subd. 4, is not conditioned on a conviction of receiving stolen property and determined that the jury's findings on the conversion claims were supported by the evidence and legal authority.

More4aBuck and Raine moved for an award of attorney fees and costs under Minn. Stat. § 609.53, subd. 4. Appellant asked that the requested amount of attorney fees be prorated because five of the eight receiving-stolen-property claims were unsuccessful. The district court denied appellant's request and awarded More4aBuck and Raine attorney fees of $44,696.22 and costs of $4,185.46. The court reasoned that "the jury could have concluded that [appellant's] pattern of conduct as to all [of respondents'] vehicles" was

_____

[1] One of the respondents, RyAnne Quirk, was inadvertently omitted from the special-verdict form, and appellant and Quirk stipulated posttrial that, absent a valid legal defense, appellant had converted Quirk's vehicle and she sustained actual damages.

3

evidence that appellant violated Minn. Stat. § 609.53, subd. 1, with respect to the three vehicles owned by More4aBuck and Raine and that, according to caselaw, a "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."

This appeal follows the entry of judgments for respondents.

**D E C I S I O N**

**I.**

Appellant argues that the district court erred by determining that appellant can be held liable for damages under Minn. Stat. § 609.53, subd. 4, without being convicted of receiving stolen property in violation of Minn. Stat. § 609.53, subd. 1. Subdivision 1 of the receiving-stolen-property statute states: "[A]ny person who receives, possesses, transfers, buys or conceals any stolen property or property obtained by robbery, knowing or having reason to know the property was stolen or obtained by robbery, may be sentenced in accordance with the provisions of section 609.52, subdivision 3."[2] Minn. Stat. § 609.53, subd. 1. Subdivision 4 of the statute states that "[a]ny person who has been injured by a violation of subdivision 1 . . . may bring an action for three times the amount of actual damages sustained by the plaintiff or $1,500, whichever is greater, and the costs of suit and reasonable attorney's fees." *Id.*, subd. 4.

Appellant cites *Dairy Farm Leasing Co. v. Haas Livestock Selling Agency, Inc.*, 458 N.W.2d 417 (Minn. App. 1990), to support its argument that a conviction is a prerequisite

_____

[2] Minn. Stat. § 609.52, subd. 3 (2014), establishes sentences for theft offenses.

4

to civil liability. In *Dairy Farm Leasing*, the owner of some dairy cows that had been leased to a third party sued a selling agency for conversion after the agency sold the cows for slaughter. *Id.* at 418. The district court determined that the agency was not liable for conversion and, therefore, did not award damages. *Id.* This court reversed the district court and remanded for a determination of damages. *Id.* at 420.

The owner of the cows also claimed that it was entitled to treble damages for conversion of the cows under Minn. Stat. § 609.551, subds. 1, 4 (1988), which defined the crime of livestock theft and provided "that a person who has been injured 'by a violation of this section' may bring an action for treble damages, costs and attorney fees." *Id.* at 420 (quoting Minn. Stat. § 609.551, subd. 4). With respect to the treble-damages claim, this court stated only: "Section 609.551 is a criminal statute for theft of livestock. There has been no such criminal conviction in this case, and [the owner] cites no authority for finding a violation of this statute in a civil proceeding; we cannot extend these damages to this civil case." *Id.*

This court's statement that the owner of the dairy cows cited no authority for finding a violation of the statute in a civil proceeding was not a determination that a conviction is a prerequisite to civil liability. The owner of the cows filed an action for conversion, which did not require proof that the theft-of-livestock statute was violated. There had been no conviction for theft of livestock, and the district court had not found that the statute was violated. On appeal, the owner did not cite any authority that permitted this court to find that the statute was violated, and, without a conviction, which would have proved a

5

violation, this court did not extend treble damages to the conversion case. This court did not undertake any statutory-interpretation analysis.

The interpretation of a statute presents a question of law, which is reviewed de novo. *Wayzata Nissan, LLC v. Nissan N. Am., Inc.*, 875 N.W.2d 279, 284 (Minn. 2016). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). "To interpret a statute, [an appellate court] first assesses whether the statute's language, on its face, is clear or ambiguous." *Sleiter v. Am. Family Mut. Ins. Co.*, 868 N.W.2d 21, 24 (Minn. 2015) (quotation omitted). "When legislative intent is clear from the statute's plain and unambiguous language, [the court] interpret[s] the statute according to its plain meaning without resorting to other principles of statutory interpretation." *Binkley v. Allina Health Sys.*, 877 N.W.2d 547, 550 (Minn. 2016) (quotation omitted). But "[i]f a statute is reasonably susceptible to more than one interpretation, it is ambiguous and [the court] may resort to the canons of construction or legislative history in order to determine the intent of the Legislature." *Id.* at 550-51.

Minn. Stat. § 609.53, subd. 4, speaks of "a violation of subdivision 1," rather than of a conviction under subdivision 1; it does not make a conviction under subdivision 1 a condition for imposing liability for damages under subdivision 4. An appellate court "cannot add words to a statute that the Legislature intentionally or inadvertently left out." *Great River Energy v. Swedzinski*, 860 N.W.2d 362, 364 (Minn. 2015) (quotation omitted); *see also 328 Barry Ave., LLC v. Nolan Props. Grp., LLC*, 871 N.W.2d 745, 750 (Minn. 2015) (stating that appellate court "cannot add words to an unambiguous statute under the

6

guise of statutory interpretation").  Thus, we conclude that under the unambiguous language of Minn. Stat. § 609.53, subd. 4, a criminal conviction for violating Minn. Stat. § 609.53, subd. 1, is not required to establish civil liability for damages.

Our conclusion is supported by this court's analysis of a statute similar to Minn. Stat. § 609.53, subd. 4, in *T.E.S. Constr., Inc. v. Chicilo*, 784 N.W.2d 392 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010).  In *Chicilo*, a contractor received checks from construction lenders to pay for work completed by a subcontractor.  *Id*. at 394.  Instead of using the check proceeds to pay the subcontractor, the contractor deposited the checks into a bank account that the contractor controlled.  *Id.*

The first subdivision of a section in the mechanics' lien statute, Minn. Stat. § 514.02, subd. 1(a) (2008), stated that a person who received the proceeds of payments for an improvement to real estate must hold the proceeds "'in trust for the benefit of those persons who furnished the labor, skill, material, or machinery contributing to the improvement.'"  *Id.* at 395 (quoting Minn. Stat. § 514.02, subd. 1(a)).  That subdivision also defined the crime of theft of such proceeds.  *Id*.

The next subdivision in the statute stated that "[a] person injured by a violation of subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney fees, and receive other relief as determined by the court."  Minn. Stat. § 514.02, subd. 1a (2008).  The subcontractor sued the contractor under this subdivision for damages for theft of the proceeds.  *Chicilo*, 784 N.W.2d at 394.  The contractor argued that a civil action under subdivision 1a could not be brought against him because he had not been convicted of

7

violating subdivision 1(a). *Id.* at 395. This court analyzed the statute and determined that a conviction of theft was not necessary for civil liability. *Id.* at 395-96. This court explained:

> The plain language of Minn. Stat. § 514.02, subd. 1a, does not require a criminal conviction. . . . Appellant urges this court to read subdivision 1a's use of the term "violation" to mean criminal conviction of theft, as provided for in subdivision 1(b). We decline to do so because the violation of a statute is unambiguously distinct from a criminal conviction for any such violation.

*Id.* at 395.

More recently, this court held that extending an order for protection (OFP) for violating a prior OFP did not require a conviction of violating the prior OFP. *Ekman v. Miller*, 812 N.W.2d 892, 896 (Minn. App. 2012); *see also* Minn. Stat. § 518B.01, subd. 6a(a) (2014) (permitting extension of existing OFP or grant of new OFP "upon a showing that . . . the respondent has violated a prior or existing order for protection"). This court stated, "Minn. Stat. § 518B.01, subd. 6a, speaks of 'violations,' not 'convictions.' . . . [W]e cannot supply what the legislature has omitted. There is a meaningful difference between the concepts of 'violation' and 'conviction.'" *Ekman*, 812 N.W.2d at 896 (citation omitted).

## II.

The receiving-stolen-property statute provides that any person who has been injured by a violation of the statute may recover "the costs of suit and reasonable attorney's fees." Minn. Stat. § 609.53, subd. 4. Appellant argues that the district court abused its discretion

by awarding More4aBuck and Raine the full amount of attorney fees associated with this lawsuit when five out of eight receiving-stolen-property claims were not successful.

An appellate court reviews an award of attorney fees for an abuse of discretion. *County of Dakota v. Cameron*, 839 N.W.2d 700, 711 (Minn. 2013). The appellate court "will not set aside a district court's factual findings underlying an award of attorney fees unless they are clearly erroneous." *Id.* (quotation omitted).

"Generally, Minnesota courts have used the lodestar method for determining the reasonableness of statutory attorney fees." *Green v. BMW of N. Am., LLC*, 826 N.W.2d 530, 535 (Minn. 2013); *see also Cameron*, 839 N.W.2d at 711 (stating that supreme court "ha[s] consistently adopted the lodestar approach whenever a statute contains an explicit directive that an award of attorney fees must be reasonable"). "The lodestar method first requires a district court to determine the number of hours reasonably expended on the litigation and multiply that number by a reasonable hourly rate." *Cameron*, 839 N.W.2d at 711 (quotations omitted). "A court must consider all relevant circumstances when evaluating the reasonableness of the hours expended by attorneys and their hourly rates." *Id.* (quotation omitted).

> A court then evaluates the overall reasonableness of the award by considering such factors as the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client.

*Id.* (quotation omitted).

Respondents collectively sustained actual damages of $28,048.11. Of this amount, $8,132.50 was attributable to More4aBuck and Raine, the only respondents whose receiving-stolen-property claims were successful. More4aBuck's and Raine's actual damages were tripled to $24,397.50 pursuant to section 609.53, subdivision 4, and the damages judgments against appellant totaled $44,313.11. The district court awarded More4aBuck and Raine $44,696.22 in attorney fees.

Appellant argues that because the actual damages incurred by More4aBuck and Raine were 28.9% of the total actual damages awarded, the attorney-fee award to More4aBuck and Raine should be 28.9% of the total attorney fees incurred. "Where a plaintiff succeeds on only some claims and fails on others, two questions must be addressed: whether the unsuccessful claims were related to the successful claims, and whether the plaintiff's level of success makes the hours expended a satisfactory basis for making the fee award." *Musicland Grp., Inc. v. Ceridian Corp.*, 508 N.W.2d 524, 535 (Minn. App. 1993), *review denied* (Minn. Jan. 27, 1994).

In some cases:

> the claims will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. The most critical factor is the degree of success obtained.

*Id.* (quotation and citations omitted); *see also Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 776 N.W.2d 172, 179-80 (Minn. App. 2009) (relying on *Musicland* to affirm

attorney-fee award that included fees associated with unsuccessful motion for temporary injunction).

Appellant argues that the district court erred as a matter of law in relying on this court's decision in *Riverview* because *Riverview* involved analysis of a single plaintiff's multiple claims, while this case involves seven plaintiffs and their multiple claims. Appellant contends that "[t]he trial court's finding essentially holds that in a consolidated case, a single plaintiff need be successful on a claim carrying attorney's fees for purposes of receiving all attorneys' fees expended in the entire consolidated case—with no input as to the damages sought by each plaintiff's claim." Appellant argues that "[t]his principle runs afoul of the principle that an award of attorneys' fees should factor in the results secured at trial" and "[t]he amount awarded should be in reasonable relation to the amount of the judgment secured."

Appellant's arguments disregard the district court's rationale for the attorney-fee award. *See Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 629-30 (Minn. 1988) (stating that, when reasonableness of requested attorney fees is challenged, district court must provide a "'concise but clear explanation of its reasons for the fee award'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983)). The district court explained that, to prevail on a receiving-stolen-property claim, it was necessary to prove that when appellant received a stolen vehicle, it knew or had reason to know that the vehicle was stolen. For each receiving-stolen-property claim, proving this element of the claim required evidence that showed appellant's practice of purchasing vehicles without obtaining proof of ownership. And to prove that appellant had such a

11

practice, each claimant needed to present evidence of multiple vehicle purchases. Consequently, evidence about appellant's purchases of all of respondents' vehicles was relevant to each respondent's claim, and all of the claims had a common core of facts; the facts regarding all of the purchases established appellant's practice. The district court did not award the full amount of fees requested simply because three of the claims were successful. The court awarded the full amount because proving the pattern of conduct that was needed to prevail on the three successful claims required the evidence presented for all eight claims. The case involved eight separate claims, but the theory of the case was that each of the claims arose from the same practice.

Furthermore, in district court, appellant argued only that the proportion of the claimed fees that should be awarded for the successful receiving-stolen-property claims should be limited to the proportion of the total actual damages awarded for those claims. But the "direction to lower courts to consider the amount involved and the results obtained when awarding reasonable attorney fees does not amount to a 'dollar value proportionality rule.'" *Green*, 826 N.W.2d at 538; *see also Cameron*, 839 N.W.2d at 712 (stating that "[t]here is no precise rule or formula for applying the results-obtained factor" (quotation omitted)). "The court should focus on whether the hours expended are reasonable in relation to the overall relief obtained." *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 623 (Minn. 2008).

The district court's explanation of its reasons for the fee award indicates that the hours expended were reasonable in relation to the successful receiving-stolen-property claims. Appellant argued in district court that "it is irrational and unreasonable to conclude

12

that the work performed in association with 3 claims rather than 5 would have required the same attorney's hours." Appellant has not identified anything in the record that indicates that respondents' attorneys would not have performed approximately the same amount of work had the lawsuit been brought only by More4aBuck and Raine, rather than by all seven respondents. We therefore conclude that the district court did not abuse its discretion in awarding attorney fees.

**III.**

Appellant argues that the district court erred by denying its motion for judgment as a matter of law on the conversion claims of the five respondents who did not succeed in their receiving-stolen-property claims. Judgment as a matter of law should be granted

> only in those unequivocal cases where (1) in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case.

*Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816 (Minn. 2006) (quotation omitted). "The denial of a motion for judgment as a matter of law presents a question of law that [an appellate court] review[s] de novo." *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 220 (Minn. 2014).

The receiving-stolen-property statute is violated when a person "receives, possesses, transfers, buys or conceals any stolen property or property obtained by robbery, *knowing or having reason to know* the property was stolen or obtained by robbery." Minn. Stat. § 609.53, subd. 1 (emphasis added). Appellant argues that, because it stipulated that the vehicles were stolen, the jury's failure to find that appellant violated section 609.53,

13

subdivision 1, with respect to five of the vehicles means that the jury determined that appellant did not know or have reason to know that those five vehicles were stolen. Appellant contends that, given this determination, the jury's findings that those vehicles were converted are contrary to the law.

Conversion is "an act of willful interference with the personal property of another, done, without lawful justification, by which any person entitled thereto is deprived of use and possession" or "the exercise of dominion and control over goods inconsistent with, and in repudiation of, the owner's rights in those goods." *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 585 (Minn. 2003) (quotations omitted); *see also* Restatement (Second) of Torts § 222A(1) (1965) ("Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.").

"The elements of common law conversion are: (1) plaintiff holds a property interest; and (2) defendant deprives plaintiff of that interest." *Williamson v. Prasciunas*, 661 N.W.2d 645, 649 (Minn. App. 2003). "Good faith is not a defense to a claim of conversion." *Id.*; *see also Larson v. Archer-Daniels-Midland Co.*, 226 Minn. 315, 317, 32 N.W.2d 649, 650 (1948) ("As a general rule, the intent, knowledge, or motive of the converter is immaterial except as affecting damages."); Restatement (Second) of Torts § 244 (1965) ("An actor is not relieved of liability to another for . . . conversion by his belief, because of a mistake of law or fact not induced by the other, that he (a) has possession of the chattel or is entitled to its immediate possession, or (b) has the consent of the other or of one with power to consent for him, or (c) is otherwise privileged to act.").

14

Conversion does not require proof that the defendant knew or had reason to know that the property interest was wrongfully being deprived. The jury's findings are not in conflict, and the district court did not err by denying appellant's motion for judgment as a matter of law.

**Affirmed.**