Ernest O'NEILL, Jr., et al.,
Respondents,

v.

ILLINOIS FARMERS INSURANCE
COMPANY, Appellant.

No. C8–85–1626.

Supreme Court of Minnesota.

Feb. 14, 1986.

Lawrence M. Rocheford, St. Paul, for appellant.

Douglas Peine, Minneapolis, James R. Tschida, St. Paul, for respondents.

SIMONETT, Justice.

When does the statute of limitations begin to run on a cause of action to imply underinsured motorist coverage in an insurance policy and to recover underinsured motorist benefits under the implied coverage? We hold it begins on the date of the automobile accident causing claimant's injury.

On October 18, 1978, plaintiff-respondent Patricia O'Neill, then 14, was injured in an auto accident. On April 26, 1985, 6½ years after the accident, she and her father

brought this action for underinsured motorist benefits against the father's liability carrier, defendant-appellant Illinois Farmers Insurance Company. The district court denied defendant's claim that the action was barred by the statute of limitations and certified the question to the court of appeals as important and doubtful. We accepted the court of appeals' certification of the appeal to us for accelerated review.

About 4½ years after the auto accident, on March 16, 1983, O'Neill settled her tort claim with the insurer of the motor vehicle involved in the accident. About 2 years later, on April 26, 1985, she commenced this action.[1] The trial court reasoned that the statute of limitations did not begin to run until there was a breach of contract and that the breach did not occur until Illinois Farmers had denied a claim for underinsured benefits. This denial, all parties agree, did not occur until sometime after the settlement with the tortfeasor, and, therefore, within 6 years prior to the filing of this suit. The trial judge also based his ruling partially on an assumption that Illinois Farmers' policy contained an "exhaustion clause," providing that there would be no coverage until tort liability coverage had been used up.

Plaintiffs' cause of action is to establish an implied-in-law contract for underinsured motorist coverage and to recover benefits under that coverage. We agree with the parties that this action sounds in contract and is governed by the 6-year statute of limitations for contracts. Minn.Stat. § 541.05, subd. 1(1) (1984).[2] The limitation period begins to run when the cause of action "accrues," or, put differently, when an action thereon can be brought. *E.g.,*

*Bachertz v. Hayes-Lucas Lumber Co.,* 201 Minn. 171, 176, 275 N.W. 694, 697 (1937). Having said this, we still have a distance to go, for when did plaintiffs' cause of action accrue?

O'Neill argues that a cause of action for breach of contract accrues upon a breach and points out that an insurance contract is breached when an insurer refuses to pay a rightful claim. *Olson v. Rugloski,* 277 N.W.2d 385 (Minn.1979). Because a refusal normally does not occur until a claimant demands payment, O'Neill concedes that the statute of limitations might not begin to run indefinitely. *But see Weston v. Jones,* 160 Minn. 32, 36, 199 N.W. 431, 433 (1924) ("It is not the policy of the law to permit a party to postpone the operation of the statute [of limitations] indefinitely by failing to do an act within his power which is necessary to perfect his remedy."). More importantly, however, O'Neill's argument overlooks that her action is for more than a refusal to pay a claim. Her action necessarily includes first amending the insurance contract to imply the covenant which makes the refusal to pay a breach of contract. Patricia O'Neill would not have had standing to amend the policy prior to her injury, and, while her father, the policyholder, might theoretically have done so, practically, it would seem he need only have asked to buy the underinsured coverage and it would have been sold to him. Rather, it is when the accident giving rise to the injury happens that a cause of action to establish implied-in-law underinsured motorist coverage accrues. It is at this time that the injured person can bring an action for underinsured motorist benefits.

1. In January 1980, more than 1 year after O'Neill was injured, this court decided *Holman v. All Nation Insurance Co.,* 288 N.W.2d 244 (Minn.1980), construing the No-Fault Act to hold that where an insurer had failed to establish that a mandatory offer of underinsured motorist coverage had been made, the coverage would be added to the policy by operation of law. O'Neill argues that *Holman* created a new cause of action so that she had no cause of action to accrue before that decision. *Holman,* however, did not create a new cause of action; it simply was the first case to enforce a duty

already created by statute. A claimant's unawareness or ignorance of a cause of action does not, absent fraud, toll the statute of limitations. *Dalton v. Dow Chemical Co.,* 280 Minn. 147, 153, 158 N.W.2d 580, 584 (1968).

2. The parties also agree that Patricia O'Neill's minority at the time of her accident does not toll the statute of limitations. *See Anderson v. Lutheran Deaconess Hospital,* 257 N.W.2d 561 (Minn.1977).

Plaintiffs argue that a cause of action for underinsured benefits cannot be brought until it is known if the tortfeasor is underinsured. Aside from the fact that policy provisions requiring an exhaustion of remedies against the tortfeasor are not a bar to an underinsured motorist benefits claim, *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), steps taken by a claimant in ascertaining what underinsured motorist benefits she might be entitled to, do not preclude the statute of limitations from beginning to run. *See, e.g., Weston v. Jones, supra; State ex rel. Slingerland v. Norton*, 59 Minn. 424, 61 N.W. 458 (1894). At the time of the accident the injured person surveys her legal remedies and decides how best in the next 6 years to proceed, but the fact that the damages are unknown or unpredictable does not stop the 6 years from running. *Weston v. Jones, supra* (statute of limitations for breach of contract begins running with the breach even though damages do not occur until afterwards); *cf. Dalton v. Dow Chemical Co.*, 280 Minn. 147, 154, 158 N.W.2d 580, 585 (1968) (the tort statute of limitations begins with the negligent act and some damage, even if the ultimate damage is unknown or unpredictable). *See also State Farm Mutual Automobile Insurance Co. v. Kilbreath*, 419 So.2d 632 (Fla.1982).

We hold, therefore, that in an action to imply underinsured motorist benefits in an insurance policy and to recover those benefits under the policy as amended, the statute of limitations begins to run from the date of the auto accident causing the injury. We add the court of appeals came to the same conclusion in *Karels v. American Family Mutual Insurance Co.*, 371 N.W.2d 617 (Minn.Ct.App.1985), a decision that we affirm today, 381 N.W.2d 441.[3]

3. Plaintiffs' reliance on *Spira v. American Standard Insurance Co.*, 361 N.W.2d 454 (Minn.Ct.App.1985), *petition for rev. denied*, (March 29, 1985), is misplaced. *Spira* held that the 6-year contract statute of limitations did not begin to run on an arbitration claim for uninsured motorist benefits until a demand for arbitration had been made and refused. In *Spira*, however, the uninsured coverage was not implied but was

Because of our answer to the certified question, the district court's ruling is reversed.

in the policy when issued. Because neither in the policy nor in the statutes was there a limitation period for the bringing of arbitration claims, the court of appeals correctly held, following *Har-Mar, Inc. v. Thorsen & Thorshov, Inc.*, 300 Minn. 149, 218 N.W.2d 751 (1974), that time did not begin to run until the arbitration claim was made and denied. This case and *Karels* are entirely different than *Spira*.