**Sergey OGANOV, Appellant,**

v.

**AMERICAN FAMILY INSURANCE GROUP, Respondent.**

No. A07–929.

Supreme Court of Minnesota.

June 25, 2009.

Bryce J. Johnson, Griffel & Dorshow, Chartered, Minnetonka, MN, for appellant.

James M. Hamilton, David Oskie, Oskie, Hamilton & Sofio, P.A., Saint Paul, MN, for respondent.

## OPINION

DIETZEN, Justice.

In October 2006, appellant Sergey Oganov filed a lawsuit against respondent American Family Insurance Group (American Family) alleging that he was entitled to uninsured motorist (UM) benefits that arose from a January 1999 automobile accident. American Family moved for summary judgment, arguing among other things that Oganov's claim was time-barred by the six-year statute of limitations. Oganov responded that his UM claim did not accrue until the tortfeasor's insurer became insolvent, either when the insurer was placed in "rehab" in April 2002, or when it was declared insolvent and liquidated in July 2003, and that his lawsuit was commenced within six years of that date. The district court dismissed Oganov's UM claim as time-barred because the action was not commenced within six years of the date of the accident. The court of appeals affirmed, and subsequently we granted review. We reverse.

On January 18, 1999, Oganov was seriously injured when his vehicle collided with a snowplow-truck owned by his employer, Bob Ryan Oldsmobile (Ryan Oldsmobile), and operated by a co-worker. At the time of the accident, Oganov was insured by American Family. Ryan Oldsmobile was insured by Legion Insurance Company (Legion). Oganov submitted a claim to Legion in 1999.

In October 2001, Oganov's attorney sent a letter to Legion updating it on Oganov's liability claim. Legion denied the claim on the ground that Oganov's injuries predated the accident. Oganov later retained a new attorney to represent him and pursue his claim. In May 2003, Oganov's new attorney sent a letter to Legion informing it of his representation of Oganov. Legion responded by letter and reiterated its denial of the claim. Legion also notified Oganov that it had been placed into "Rehab" by a Pennsylvania court, effective April 1, 2002, and that all negotiations and litigation were stayed until June 30, 2003. Subsequently, on July 25, 2003, the Pennsylvania court declared Legion insolvent and ordered the company liquidated effective July 28, 2003.

Oganov claims that he was notified of Legion's liquidation by a letter from a third-party claims administrator dated December 9, 2004. On June 23, 2005, Oganov filed his UM claim with American Family. After reviewing the claim, American Family tendered a settlement offer of $2,400. Oganov rejected the offer and commenced an action against American Family on October 17, 2006. American Family moved for summary judgment on the grounds that: (1) the statute of limitations barred the claim, and (2) the snowplow-truck was not an "uninsured motor vehicle" under the American Family policy, because the policy excluded from its coverage an "uninsured" claim caused by an insolvency of tortfeasor's insurance that occurred more than one year after the accident.

The district court granted summary judgment in favor of American Family based on the statute of limitations and did not reach the issue of whether Oganov's UM claim was excluded under the policy. The court of appeals affirmed in an unpublished decision. *Oganov v. Am. Family Ins. Group,* No. A07–0929, 2008 WL 2020487 (Minn.App. May 13, 2008). Applying our decision in *Weeks v. American Family Mutual Insurance Co.,* 580 N.W.2d 24 (Minn.1998), the court of appeals determined that the six-year statute of limitations for Oganov's UM claim be-

gan to run on the date of the accident. *Id.* at *2–3. Therefore, the court of appeals concluded that Oganov's claim was untimely. The court of appeals did not reach the question of whether Oganov's claim was excluded under the policy.[1]

## I.

■■ Oganov argues that the district court and the court of appeals erred by dismissing his UM claims as barred by the six-year statute of limitations. He argues that the statute of limitations began to run on the date of the liability insurer's insolvency, and not on the date of the accident.

■ When reviewing a decision to grant summary judgment, we examine whether there are genuine issues of material fact and whether a party is entitled to judgment as a matter of law. *Metro. Airports Comm'n v. Noble*, 763 N.W.2d 639, 643 (Minn.2009). In this case, the material facts are undisputed. *Id.* The date a claim accrues and the statute of limitations begins to run is a question of law that we review de novo. *Benigni v. County of St. Louis*, 585 N.W.2d 51, 54 (Minn.1998).

■ Generally, a claim accrues and the statute of limitations begins to run on the date the injured party suffers some damage that is sufficient to survive or successfully defend against a motion to dismiss. *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn.1999). In this case, it is undisputed that a UM claim is subject to a six-year statute of limitations. *See* Minn.Stat. § 541.05 (2008) (establishing a six-year contract statute of limitations);

*Miklas v. Parrott*, 684 N.W.2d 458, 460–61 (Minn.2004) (holding that the six-year contract statute of limitations applies to UM claims). The narrow issue before us is when the statute of limitations began to run on Oganov's cause of action for UM benefits.

■■ The No–Fault Act requires insurers to include "uninsured motorist" coverage in their policies to protect claimants in the event they are in an accident with an "uninsured motor vehicle." Minn.Stat. § 65B.49, subd. 3a (2008). The Act defines "uninsured motor vehicle" as "a motor vehicle or motorcycle for which a plan of reparation security meeting the requirements of sections 65B.41 to 65B.71 is not in effect." Minn.Stat. § 65B.43, subd. 16 (2008). UM coverage is available to insureds who are legally entitled to recover damages for bodily injury from an owner or operator of an uninsured motor vehicle. Minn.Stat. § 65B.43, subd. 18 (2008). A claimant may commence an action to recover UM benefits against his insurer, without first making a claim directly against the uninsured motorist. *Kwong v. Depositors Ins. Co.*, 627 N.W.2d 52, 56 (Minn.2001). The only condition precedent for a UM claim is that the claimant "show that the tortfeasor was uninsured." *Employers Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 857 n. 4 (Minn.1993).

The No–Fault Act also requires that insurers include "underinsured motorist" (UIM) coverage in their policies in the event a claimant is in an accident with an "underinsured motor vehicle". Minn.Stat.

---

1. American Family argued to the district court that the definition of an uninsured motor vehicle in the policy bars Oganov's claim. This argument was not addressed by either the district court in its order granting summary judgment or subsequently by the court of appeals. Furthermore, Oganov did not address this issue in his petition for review or

brief to this court. Consequently, we decline to reach this issue for the first time on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (holding that this court will generally not consider matters not argued and considered by the court below). On remand, this issue is properly before the district court.

§ 65B.49, subd. 3a. The Act defines "underinsured motor vehicle" as "a motor vehicle or motorcycle to which a bodily injury liability policy applies at the time of the accident but its limit for bodily injury liability is less than the amount needed to compensate the insured for actual damages." Minn.Stat. § 65B.43, subd. 17 (2008). UIM coverage is available to insureds who are legally entitled to recover damages for bodily injury from owners or operators of underinsured motor vehicles. *See* Minn.Stat. § 65B.43, subd. 19 (2008).

Oganov argues that the limitations period on his UM claim should begin to run on the date the court declared that Legion was insolvent and not on the date of the accident. We have held that a claim for UM benefits accrues on the date of the accident. *Weeks v. Am. Family Mut. Ins. Co.*, 580 N.W.2d 24, 27 (Minn.1998). Essentially, Oganov asks us to overturn *Weeks*, or carve out an exception to *Weeks* for UM claims created by the insolvency of the tortfeasor's insurer.

In *Weeks*, we considered whether a cause of action for UM benefits accrues on the date of the accident or on the date the insurer rejects the claim. We held that a cause of action accrues on the date of the accident, and therefore the claim was barred by the statute of limitations. *Id.* at 27. Our holding in *Weeks* rested on the premise that a cause of action for UM benefits is generally governed by contract principles but also presents tort aspects because liability is determined by tort law. *Id.* at 26–27; *see Beaudry v. State Farm Mut. Auto. Ins. Co.*, 518 N.W.2d 11 (Minn. 1994) ("Whether an uninsured or underinsured motorist claim is to be viewed from its contract or tort aspects depends on the question being asked."), *overruled in part by Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn.2000). Because liability rather than the existence of coverage was

the underlying issue, we concluded that the cause of action for UM benefits accrues once the accident occurs. *Weeks*, 580 N.W.2d at 26–27. We noted that a "date of the accident" accrual date for UM claims was consistent with the "date of the accident" accrual date for UIM claims that we established in *O'Neill v. Illinois Farmers Insurance Co.*, 381 N.W.2d 439 (Minn. 1986), *overruled in part by Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn. 2000), and reiterated in *Beaudry* and other cases. *Weeks*, 580 N.W.2d at 26–27. We rejected the argument that the cause of action accrues when the contract is breached, which would be the date the insurance company denies the claim. *Id.* at 26. We noted that if a cause of action accrues after a claim is rejected by the insurance company, claimants "would be allowed to independently postpone the running of the statute of limitations." *Id.*

Subsequent to *Weeks*, we reconsidered the question of when a UIM claim accrues in *Oanes v. Allstate Insurance Co.*, 617 N.W.2d 401 (Minn.2000). In *Oanes*, the appellant filed a UIM claim with Allstate for injuries sustained in a multi-car accident. *Id.* at 402. Allstate informed the appellant that under the policy her UIM claim was not ripe until all tortfeasors' "limits of liability" had been exhausted by settlement or judgment. *Id.* The appellant successfully pursued her claims against the various tortfeasors, but by the time all claims had been settled, more than six years had passed since the date of the accident. *Id.* Allstate defended its denial of UIM benefits to appellant on the ground that the six-year statute of limitations on her claim had expired. *Id.* The district court dismissed the claim as time-barred and the court of appeals affirmed. *Id.* at 403.

We reversed the court of appeals, holding that a UIM claim accrues and the

statute of limitations begins to run on the date of settlement with or judgment against the tortfeasor. *Id.* at 406. We "reject[ed] the rule that a UIM claim accrues on the date of the accident that causes the injury" and overruled *O'Neill, Beaudry,* and *Weeks* to the extent that they set a "date of the accident" accrual date for UIM claims. *Id.* In doing so, we resolved a paradox in our case law.

On the one hand, our *O'Neill–Weeks* line of cases required that a claimant bring his or her UIM claim within six years of the date of the accident. *See Weeks,* 580 N.W.2d at 27. On the other hand, we stated in *Employers Mutual Cos. v. Nordstrom* that a settlement or adjudication of an action against a tortfeasor was a condition precedent to bringing a UIM claim. 495 N.W.2d at 858. We observed that applying *O'Neill–Weeks* in conjunction with *Nordstrom* made it possible for the statute of limitations on a UIM claim to run "before it is known whether the tortfeasor is actually underinsured." *Oanes,* 617 N.W.2d at 405. We concluded that such a result was illogical and reflected an inconsistency in our case law that needed correction. *Id.* at 406.

Accordingly, we articulated an accrual date rule in *Oanes* that strikes a balance between protecting the claimant's interests and the insurer's interests. Specifically, *Oanes* protects claimants in that the statute of limitations will not be triggered until the claim becomes ripe, and it protects insurers because claimants are not allowed to delay the running of the limitation period indefinitely by failing to assert their UIM claim. *Id.* at 407.

Because *Oanes* only involved a UIM claim, we declined to extend the new rule to cover UM claims. *Id.* at 406 n. 2. We recognized that differences exist between UIM and UM claims that may have a bearing on the appropriate accrual rule. *Id.* For example, a UM claimant does not

have to recover first from the uninsured tortfeasor; rather, the claimant merely must show that the tortfeasor was uninsured. *Id.* We left open the issue of whether these distinctions warrant different accrual date rules for UM and UIM claims. *Id.* It is this issue that the parties ask us to resolve here.

Oganov urges us to extend our holding in *Oanes* to include UM claims and overrule *Weeks* to the extent it conflicts with *Oanes.* Under the doctrine of stare decisis, we will not overrule a previous case absent a "compelling reason" to do so. *Oanes,* 617 N.W.2d at 406. We find several compelling reasons to extend *Oanes,* and carve out an exception to *Weeks* in cases where the tortfeasor's insurer is declared insolvent within the six-year limitations period.

First, it is illogical to conclude that a UM claim accrues and the limitations period begins to run on the date of the accident when the claim does not exist at the time of the accident, but rather is created by the subsequent insolvency of the tortfeasor's insurer. Second, fixing the accrual date at the time of the accident may effectively leave a claimant without coverage if the tortfeasor's insurer declares insolvency so close in time to the expiration of the limitations period that the claimant is unable to adequately present his or her claim. Such a result does not comport with our sense of justice and fair play. Nor does it comport with the express legislative purpose behind the No–Fault Act, which is "to relieve the severe economic distress of uncompensated victims of automobile accidents within this state by requiring automobile insurers to offer and automobile owners to maintain automobile insurance policies or other pledges of indemnity." Minn.Stat. § 65B.42(1) (2008).

We therefore reject the rule that a UM claim accrues on the date of the accident when that claim arises from the subse-

quent insolvency of the tortfeasor's insurer. We hold instead that if a tortfeasor's insurer is judicially declared insolvent within six years of the date of the accident, a claim for uninsured motorist benefits accrues, and the limitations period begins to run, on the date the tortfeasor's insurer is declared insolvent.[2] Put differently, in the event of an insurer's insolvency, the insurer's policy is no longer "in effect" under Minn.Stat. § 65B.43, subd. 16, on the date that the court declares the insurer insolvent, and thus it is on that date that the claimant's UM claim accrues. We emphasize that our holding is limited to UM claims arising from the insolvency of the tortfeasor's insurer. We observe that in the vast majority of cases a UM claim will accrue on the date of the accident because the at-fault driver did not have insurance.

Here, the tortfeasor's insurer was declared insolvent on July 25, 2003. Accordingly, as of July 25, 2003, the tortfeasor was uninsured and Oganov's UM claim could have survived a motion to dismiss. Thus, it was on this date that Oganov's UM claim accrued and the six-year statute of limitations began to run. Because Oganov commenced an action against American Family on October 17, 2006, well within the six-year limitations period, we hold that his UM claim is not time-barred.

Reversed and remanded.

MAGNUSON, C.J., took no part in the consideration or decision of this case.

---

2.  Other jurisdictions have devised similar accrual date rules in the event of insurer insolvency. *See, e.g., North Carolina Ins. Guar. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 115 N.C.App. 666, 446 S.E.2d 364, 369 (1994) (holding that the insured's UM cause of action did not accrue until he was "at liberty to sue" due to insurer's insolvency); *Kraly v. Vannewkirk,* 69 Ohio St.3d 627, 635 N.E.2d 323, 329 (1994) (holding that where the tortfeasor's insurer has declared insolvency subsequent to the accident, the insured's UM claim "accrues on the date that the insured receives notice of the insolvency").