STATE OF MINNESOTA

IN SUPREME COURT

A14-1189

Court of Appeals

Dietzen, J.
Concurring, Lillehaug, J.
Took no part, Anderson, Chutich, JJ.

Jamy Hegseth f/k/a Jamy Jager,

Appellant,

vs.

Filed: March 23, 2016
Office of Appellate Courts

American Family Mutual Insurance Group,

Respondent.

_____

Michael A. Bryant, Kevin S. Carpenter, Bradshaw & Bryant, PLLC, Waite Park, Minnesota, for appellant.

Mark K. Hellie, Rylee J. Retzer-Busselmann, Eden Prairie, Minnesota, for respondent.

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, Minnesota, for amicus curiae Minnesota Association for Justice.

Beth A. Jenson Prouty, Bassford Remele, P.A., Minneapolis, Minnesota, for amicus curiae Property Casualty Insurance Association of America.

_____

S Y L L A B U S

1.      The resolution of the primary uninsured motorist claim is not a condition precedent to the assertion of a claim for excess uninsured motorist benefits under the No-Fault Act, Minn. Stat. §§ 65B.41-.71 (2014).

1

2. Claims for excess uninsured motorist benefits accrue on the date of the accident.

Affirmed.

O P I N I O N

DIETZEN, Justice.

This case requires us to determine the accrual date of a claim for excess uninsured motorist ("UM") benefits under the Minnesota No-Fault Act, Minn. Stat. §§ 65B.41-.71 (2014). Appellant Jamy Hegseth brought a lawsuit against her insurer, respondent American Family Mutual Insurance Group ("American Family"), seeking excess UM benefits for injuries arising out of a 2007 motor vehicle collision. After settling her primary UM claim, Hegseth brought suit against American Family for excess UM benefits. The district court granted American Family's motion for summary judgment, concluding that the excess UM claim accrued on the date of the accident, and therefore was barred by the 6-year statute of limitations for contract actions. The court of appeals affirmed, and we granted review. For the reasons that follow, we affirm.

The material facts are undisputed. On March 30, 2007, Hegseth was a passenger in a vehicle driven by another person when that vehicle and a semi-truck were involved in an accident that injured Hegseth. The semi-truck left the scene of the accident before the identity of the driver could be determined.

Hegseth sought UM benefits[1] from two insurance policies—a policy issued by West Bend Insurance that covered the vehicle she was riding in, and an American Family policy that covered her own vehicle. The West Bend policy had $50,000 of UM coverage, and the American Family policy had $100,000 of UM coverage. The parties agree that, under Minn. Stat. § 65B.49, subd. 3a(5), the American Family policy is considered excess UM protection.

On June 14, 2012, Hegseth settled her claim for primary UM benefits with West Bend for the UM policy limit of $50,000. On August 17, 2012, Hegseth demanded that American Family pay her excess UM benefits. On September 13, 2012, American Family denied the claim, contending that Hegseth had been fully compensated for her injuries.

On July 9, 2013, Hegseth commenced a lawsuit seeking excess UM benefits from American Family. American Family moved for summary judgment on the ground that the excess UM claim was barred by the 6-year statute of limitations for contract actions in Minn. Stat. § 541.05, subd. 1(1) (2014). The district court granted the motion, concluding that Hegseth's claim had accrued over 6 years earlier, on the date of the accident. The court of appeals affirmed the judgment of the district court. *Hegseth v. Am. Family Mut. Ins. Grp.*, No. A14-1189, 2015 WL 1013967 (Minn. App. Mar. 9,

---

[1] Minnesota Statutes § 65B.43, subd. 18, provides that UM benefits are available to injured parties legally entitled to recover damages from the operators of hit-and-run vehicles.

2015). We granted review to resolve the issue of the proper accrual date for excess UM benefits.

I.

Hegseth argues that the court of appeals erred in concluding that a cause of action to recover excess UM benefits accrues on the date of the accident. According to Hegseth, the resolution of the primary UM claim is a condition precedent to the assertion of an excess UM claim, and it is fundamentally unfair for the excess claim to accrue before the occurrence of the condition. She urges us to hold that excess UM claims accrue on the date the insurer denies the claim for excess UM benefits.

When reviewing a decision to grant summary judgment, we examine whether there are genuine issues of material fact and whether a party is entitled to judgment as a matter of law. *Oganov v. Am. Family Ins. Grp.*, 767 N.W.2d 21, 24 (Minn. 2009). The date a claim accrues is a question of law that we review de novo. *Id.* To answer the question presented we will examine the relevant provisions of the No-Fault Act and our case law, and then apply the law to the dispute before us.

A.

The Minnesota No-Fault Act requires insurers to include uninsured motorist coverage in their automobile policies. Minn. Stat. § 65B.49, subd. 3a. Insureds may recover UM benefits when they are legally entitled to recover damages for bodily injury from the owner or operator of an uninsured motor vehicle or hit-and-run vehicle. Minn. Stat. § 65B.43, subd. 18. An "uninsured motor vehicle" is a vehicle "for which a plan of

4

reparation security meeting the requirements of [the No-Fault Act] is not in effect."
Minn. Stat. § 65B.43, subd. 16.

Minnesota Statutes § 65B.49, subd. 3a(5), sets forth a priority scheme to identify UM and underinsured motorist ("UIM") coverages available to a person injured in a motor vehicle accident. The first two sentences provide:

> If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle. However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured.

Minn. Stat. § 65B.49, subd. 3a(5). Thus, if the injured passenger is not insured under the policy covering the vehicle involved in the accident, the passenger may look to policies under which she is insured to determine if she is entitled to any excess UM coverage. It is undisputed that, because Hegseth was not an insured of the vehicle involved in the accident and she had UM coverage under her American Family policy, American Family provided Hegseth excess UM coverage to the extent she satisfied the other provisions of the statute.

The third sentence of Minn. Stat. § 65B.49, subd. 3a(5) sets forth limitations on excess UM coverage:

> The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.

5

*Id.* The practical effect of this sentence is to limit the availability of excess insurance protection to: (1) the amount of covered damages sustained, and (2) the extent the liability limits of the excess UM policy exceed the coverage available to the injured party from the primary UM policy. *See Sleiter v. Am. Family Mut. Ins. Co.*, 868 N.W.2d 21, 28 (Minn. 2015) (holding that, when the full limits of the primary UM policy could not be recovered by an injured party because multiple parties made claims against the policy, "coverage available" means the benefits actually paid to the injured party by the primary policy). Because the full $50,000 UM limit of the primary policy was available to Hegseth and her American Family policy had a $100,000 UM limit, $50,000 of excess UM coverage was potentially available to her.

It is well settled that UM claims are subject to the 6-year statute of limitations governing contracts, and that the limitations period begins to run when the claim accrues. *Oganov v. Am. Family Ins. Grp.*, 767 N.W.2d 21, 24 (Minn. 2009). We have previously determined the accrual date for UM and UIM claims in three relevant cases: *Weeks v. Am. Family Mut. Ins. Co.*, 580 N.W.2d 24 (Minn. 1998); *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401 (Minn. 2000); and *Oganov*, 767 N.W.2d 21.

In *Weeks*, we considered whether a cause of action for UM benefits accrues on the date of the accident or on the date the insurer from which benefits are sought rejects the claim. 580 N.W.2d at 26. We held that a claim for UM benefits accrues on the date of the accident. *Id.* at 27. Our holding rested on the premise that a cause of action for UM benefits is governed by contract principles, but also "presents tort aspects because

6

liability under the coverage is determined by tort law." *Id.* at 26.[2] Because "liability [of the uninsured motorist] rather than the existence of coverage is the underlying substantive issue" of a UM claim, we concluded that a cause of action for UM benefits accrues when the accident occurs. *Id.* at 27. We rejected the argument that the claim accrues when the insurance company allegedly breaches the insurance contract by denying the claim, reasoning that under such a rule claimants would be able to indefinitely postpone the running of the statute of limitations. *See id.* at 26-27.

In *Oanes*, we considered whether a UIM claim accrues on the date of the accident or at a later time. 617 N.W.2d at 401. We held that a UIM claim accrues on the date of settlement with or judgment against the tortfeasor. *Id.* at 406. In doing so, we overruled the date-of-accident accrual rule previously applied to UIM claims. *Id.*; *see also O'Neill v. Ill. Farmers Ins. Co.*, 381 N.W.2d 439, 441 (Minn. 1986) (establishing a date-of-accident accrual rule for UIM claims). This decision resolved a paradox in our case law. On the one hand, *O'Neill* required a claimant to bring a UIM claim within 6 years of the accident. *See* 381 N.W.2d at 441. On the other hand, a separate line of cases established that resolution of the claim against the tortfeasor is a condition precedent to assertion of a UIM claim. *See Emps. Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 857 (Minn. 1993). We

---

[2] UM claims are subject to the statute of limitations governing contracts, *Oganov*, 767 N.W.2d at 24, but the requirement that the insured be "legally entitled to recover damages" makes tort law relevant to the assertion of a UM claim. *See* Minn. Stat. § 65B.43, subd. 18. Though a UM claimant need not prove he or she can actually recover from the tortfeasor, to assert a UM claim the insured must demonstrate damages and fault on the part of the uninsured driver. *Miklas v. Parrott*, 684 N.W.2d 458, 462-63 (Minn. 2004).

observed that the disharmony between the *O'Neill* date-of-accident accrual rule and the *Nordstrom* condition-precedent rule made it possible for the statute of limitations to expire on a UIM claim before it is known whether the tortfeasor is actually underinsured, and therefore whether a UIM claim could be brought. *Oanes*, 617 N.W.2d at 404-05.

In deciding *Oanes*, we again rejected (as we did in *O'Neill* and *Weeks*) the argument that UIM claims accrue on the date of the breach of the insurance contract. *Id.* at 406. We instead held that UIM claims accrue on the date of settlement with or judgment against the tortfeasor. *Id.* But we declined to resolve whether the new UIM accrual rule applied to UM claims. *Id.* at 406 n.2. We observed that the condition precedent for bringing a UM claim is different from that for a UIM claim, because a claimant seeking UM benefits does not have to recover first from the uninsured tortfeasor. *Id.* Instead, the claimant need only show that the tortfeasor was uninsured. *Id.* Because our *Oanes* holding did not extend to UM claims, UM claims were still subject to the date-of-accident accrual rule adopted in *Weeks*. *See id.*

In *Oganov*, we considered whether the statute of limitations on a UM claim arising due to the insolvency of an insurer began to run on the date of the accident. 767 N.W.2d at 23. We reasoned that, when a UM claim arises due to an insurer's subsequent insolvency, the tortfeasor's policy is no longer "in effect" on the date the insurer is declared insolvent. *Id.* at 27. Accordingly, we held that "if a tortfeasor's insurer is judicially declared insolvent within six years of the date of the accident, a claim for uninsured motorist benefits accrues, and the limitations period begins to run, on the date the tortfeasor's insurer is declared insolvent." *Id.* In adopting this rule, we "observe[d]

8

that in the vast majority of cases a UM claim will accrue on the date of the accident" because most UM claims arise out of an accident in which the tortfeasor was uninsured on the date of the accident. *Id.*

B.

With the relevant provisions of the No-Fault Act and our case law in mind, we turn to the question of when a cause of action for excess UM benefits accrues. Hegseth asks us to overturn our decision in *Weeks* and hold that all UM claims—both primary and excess—accrue on the date of the alleged breach of contract (i.e., the date an insurer denies the claim).[3] Amicus curiae Minnesota Association for Justice ("MAJ") argues for a more limited rule, asking us to hold that excess UM claims accrue on the date of resolution of the primary UM claim.[4] These arguments are premised on the contention

---

[3]     Hegseth additionally asks us to hold that UIM claims also accrue on the date of the breach of contract. As the case before us does not involve a UIM claim, we decline to address Hegseth's request regarding UIM claims.

[4]     We generally will not consider arguments raised for the first time on appeal, *Engfer v. Gen. Dynamics Advanced Info. Sys., Inc.*, 869 N.W.2d 295, 306 (Minn. 2015), and we generally will not decide issues raised solely by an amicus. *League of Women Voters Minn. v. Ritchie*, 819 N.W.2d 636, 645 n.7 (Minn. 2012). However, we can consider any issue if the interests of justice so require. *See* Minn. R. Civ. App. P. 103.04. In *Oanes*, we considered a very similar claim accrual argument that had not been argued before the lower courts, because there were "no disputes of fact that affect[ed] the purely legal question presented and there [was] no possible advantage or disadvantage to either party by not having a prior lower court ruling." 617 N.W.2d at 403. The accrual rule proposed by MAJ, though not previously considered, presents a very similar, purely legal question. Further, MAJ's proposed rule is premised on the same logic and legal argument as Hegseth's. MAJ simply proposes a different rule to resolve the issue, and we may adopt rules other than those advocated by the parties. *See Oanes*, 617 N.W.2d at 406. In deciding the issue before the court in this case, we consider the accrual rules suggested by both Hegseth and MAJ.

that resolution of the primary UM claim is a condition precedent to assertion of an excess claim. In the view of Hegseth and MAJ, excess UM claims present the same paradox as the one we addressed in *Oanes*: the limitations period begins to run on the date of the accident, but the claim cannot be brought until the occurrence of the condition precedent, which may not take place before the expiration of the statute of limitations. They argue that *Weeks* and *Oganov* addressed only the question of accrual of *primary* UM claims, and urge us to hold that *excess* UM claims do not accrue on the date of the accident.

But the argument of Hegseth and MAJ that resolution of the primary UM claim is a condition precedent to assertion of an excess UM claim is not supported by Minn. Stat. § 65B.49, subd. 3a(5), or our case law. Minnesota Statutes § 65B.49, subd.3a(5), simply identifies the sources of primary and excess coverage potentially available to an injured person, and sets limitations on the amount of excess coverage available. Neither limitation in the statute provides a condition precedent to bringing an excess UM claim; rather, both limitations refer only to the "extent" of excess coverage.

Nor does our case law analyzing the No-Fault Act require resolution of the primary UM claim as a condition precedent to the assertion of an excess UM claim. We have consistently described Minn. Stat. § 65B.49, subd. 3a(5), as establishing a "list of priorities" that describes "for each of several categories of circumstances, which policy an injured person may look to for coverage," rather than mandating that primary and excess claims be resolved in sequential order. *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 46 (Minn. 2008). The subdivision does not impose a condition precedent to the assertion of an excess UM claim, but rather serves to "reflect a broad policy decision to

10

tie [UM and UIM] coverage to the particular vehicle involved in the accident," unless the claimant has preselected a greater amount of coverage than the amount covering the host vehicle. *Schons v. State Farm Mut. Auto. Ins. Co.*, 621 N.W.2d 743, 747 (Minn. 2001) (quoting *Hanson v. Am. Family Mut. Ins. Co.*, 417 N.W.2d 94, 96 (Minn. 1987)); *see also Hanson*, 417 N.W.2d at 96 (explaining that in enacting subdivision 3a(5), the Legislature's intent was to overturn the prior rule that UM insurance follows the person rather than the vehicle and instead ensure that primary UM coverage is tied to the vehicle involved in the accident). We conclude that neither Minn. Stat. § 65B.49, subd. 3a(5), nor our case law requires that the injured party first resolve the primary UM claim before an excess UM claim can be asserted.

The lack of a condition precedent to the assertion of an excess UM claim is reflected in our case law, which recognizes a date-of-accident accrual rule for UM claims. *See Weeks*, 580 N.W.2d at 27. When we carved out a limited exception to the UM accrual rule in *Oganov*, we explicitly noted that "in the vast majority of cases, a UM claim will accrue on the date of the accident *because the at-fault driver did not have insurance*." 767 N.W.2d at 27 (emphasis added). We have consistently held that a claimant may commence a lawsuit to recover UM benefits against the insurer without first making a claim directly against the uninsured motorist because, unlike UIM claims, the only condition precedent to the assertion of a UM claim is that the claimant show the tortfeasor was uninsured. *Id.* at 24. Because resolution of the primary claim is not a condition precedent to the assertion of an excess UM claim, the paradox that drove our holding in *Oanes* does not exist here. Accordingly, we decline to adopt the accrual rules

11

suggested by either Hegseth or MAJ and instead hold that all UM claims—both primary and excess—accrue on the date of the accident.

The date-of-accident accrual rule affords injured parties maximum flexibility in proceeding with their UM claims. Under this rule, a party with viable claims for both primary and excess UM benefits can choose one of several paths to recover those benefits. The injured person can choose to assert the claims sequentially or simultaneously, bringing separate proceedings to establish entitlement to UM benefits or joining both the primary and excess insurers in a single proceeding. To determine that an excess UM claim is not ripe until resolution of the primary claim would eliminate this flexibility. Such a result would not accord with our "concern that insureds be allowed to maintain control over their own claims within the statutory framework of the No-Fault Act." *Kwong v. Depositors Ins. Co.*, 627 N.W.2d 52, 57 (Minn. 2001).

Additionally, a date-of-accident accrual rule best serves the purposes of the No-Fault Act. To require claimants to bring primary and excess UM claims sequentially would undermine the Act's purposes of assuring prompt payment of benefits, speeding the administration of justice, and easing the burden of litigation on the courts of this state. *See* Minn. Stat. § 65B.42. Not only would Hegseth's proposed rule lead to delayed compensation for many injured individuals, it would also create the potential for duplicative litigation. In most cases, claims for primary and excess UM benefits present the same issues to be litigated—the fault of the tortfeasor and the amount of the injured party's damages—and such questions can be efficiently decided in a single proceeding.

12

Hegseth suggests that insurers are typically unwilling to consider excess UM claims until the primary UM claim has been resolved, which could be a lengthy period. Because the statute of limitations is 6 years under Minn. Stat. § 541.05, subd. 1(1), claimants have significant time to resolve both primary and excess claims. Indeed, claimants are typically motivated to have insurance coverage and medical payment issues resolved well within the 6-year time period. Further, a delay in resolving the primary UM claim would not prevent a claimant from asserting a claim for excess UM benefits within the statute of limitations. An excess UM claimant would be able to commence a proceeding against the excess insurer to protect the excess claim even though the primary claim has not been fully resolved. In that circumstance, the excess UM claimant need only allege that he or she is entitled to excess UM benefits and has a good faith basis to believe that the amount of damages sustained exceeds the primary UM coverage available pursuant to Minn. Stat. § 65B.49, subd. 3a(5).[5]

Hegseth's proposed rule would also allow an excess UM claimant to extend the statute of limitations indefinitely by not submitting the claim, and MAJ's date-of-

---

[5] We acknowledge that in limited circumstances involving multiple injured passengers, an injured person may not be immediately certain of the extent of excess UM coverage available because the primary coverage available is yet to be determined. *See, e.g.*, *Sleiter*, 868 N.W.2d at 28. We are confident that, even in such circumstances, the primary claims will typically be resolved (and thus the coverage available determined) within the 6-year period to assert an excess claim. In the unusual circumstance in which there is a danger that the limitations period will expire before the primary claim is resolved, injured parties have options to protect their claims. If a party has a good faith basis to assert entitlement to excess benefits, the party may join the excess insurer in the proceeding against the primary insurer, or may commence a separate proceeding to obtain excess benefits and seek a stay of those proceedings pending resolution of the primary claim.

13

settlement-or-judgment rule would extend the limitations period by up to 6 years. For example, under a date-of-breach accrual rule, if a claimant settled the primary UM claim 5 years and 11 months after the date of the accident, the statute of limitations on the excess claim would not expire until 6 years following resolution of the primary claim—nearly 12 years after the date of the accident. And it is entirely possible that a claim for primary UM benefits could be brought within the 6-year limitations period but not be resolved by settlement or judgment until several years later, delaying further the accrual of the excess claim. A rule that would allow (or even require) a suit for excess UM benefits to be commenced over a decade after the accident undermines the No-Fault Act's explicit purposes of assuring prompt payment of benefits to injured parties and speeding the administration of justice. *See* Minn. Stat. § 65B.42.

In sum, we conclude that claims for excess UM benefits accrue on the date of the accident. The resolution of the primary UM claim is not a condition precedent to the assertion of a claim for excess UM benefits. Indeed, a claim for excess benefits may be brought at any time after the date of the accident if the claimant has excess UM coverage and a good faith basis to believe that the amount of damages sustained exceeds the primary UM coverage available.

Affirmed.

ANDERSON, J., took no part in the consideration or decision of this case.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

14

CONCURRENCE

LILLEHAUG, Justice (concurring).

The court's holding today rests heavily on our decision 18 years ago that a cause of action for UM insurance benefits accrues on the accident date rather than on the date of the alleged breach—in other words, when the insurer rejects the claim. *See Weeks v. Am. Family Mut. Ins. Co.*, 580 N.W.2d 24, 27 (Minn. 1998). *Weeks* acknowledged that the rule it adopted was the "minority position." *Id.* Nevertheless, the court proceeded on the theory that, although UM insurance coverage "is governed by contract, it also presents tort aspects because liability under the coverage is determined by tort law." *Id.* at 26.

I have difficulty understanding that theory. A contract claim is a contract claim and a tort claim is a tort claim. A claim alleging breach of an insurance contract should be treated like any other contract claim. Thus, the applicable statute of limitations should be the one for breach of contract, which begins to run at the time of the alleged breach. Minn. Stat. § 541.05, subd. 1(1) (2014); *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801, 803 (Minn. 1989) (citing *Bachertz v. Hayes-Lucas Lumber Co.*, 201 Minn. 171, 176, 275 N.W. 694, 697 (1937)). A claim for breach of a UM insurance contract, whether the policy is primary or excess, should be governed by the same legal principles.

But *Weeks* is the law of Minnesota. Given the doctrine of stare decisis, the court's decision not to accept appellant's invitation to overturn *Weeks* is no surprise. *See Schuette v. City of Hutchinson*, 843 N.W.2d 233, 238-39 (Minn. 2014) ("[I]n order to promote the stability of the law and the integrity of the judicial process. . . . [w]e are

extremely reluctant to overrule our precedent absent a compelling reason.") (citations and quotation marks omitted).

The court's application of *Weeks'* holding to excess UM insurance claims does contain a silver lining. Today the court announces, in no uncertain terms, that a claim made in good faith against an excess UM insurer is fully ripe as of the date of the accident. The court thereby gives clear notice to excess UM insurers that they may no longer contend that injured parties' claims to excess coverage are legally premature. Now injured parties may press excess UM insurers to join primary UM insurers at the settlement table, upon pain of lawsuit.

Accordingly, I respectfully concur.